(Decided 17th March, 1887.)

JOHN H. BRINKLEY, Executor of JOSEPH B. BRINK-
LEY *vs.* JOHN A. HAMBLETON & CO.

*Trial upon Agreed statement of Facts—Joint stock Com-
panies—Liability for calls for Unpaid subscriptions for
Stock as between Assignor and Assignee—Transfer of
Stock—Implied promise—Virginia Code of 1873, ch. 57,
sec. 26, relating to Shares of Stock not fully Paid up.*

Where a case is tried before the Court upon an agreed statement of facts, the Court decides as upon a special verdict or upon a demurrer.

Although by the statute law of Virginia, each and every assignor and assignee of stock remains liable to the company for the calls that may be made upon the stock until the full par value be paid; yet as between the assignor and assignee of the shares, there is no implied promise or obligation on the part of the assignor to pay calls made subsequent to his transfer of the shares, for the relief of a prior assignor, though the latter may have been required to pay such calls to the company.

Section 26, chapter 57, of the Virginia Code of 1873, provides in regard to joint stock companies in that State, that " no stock shall be assigned on the books without the assent of the company, until all the money which has become payable thereon shall have been paid; and on any assignment, the assignee and assignor shall each

be liable for any instalment which may have accrued, or which may thereafter accrue, and may be proceeded against in the manner before provided." A subscriber for twenty shares of the capital stock of a Virginia corporation, of the par value of $100 each, upon which only $15 per share had been paid, sold his stock to H. & Co., to whom it was regularly transferred on the books of the company. A new certificate was issued to H. & Co., for one hundred shares, in which were included these twenty shares and eighty shares purchased from other persons, so that the identity of the twenty shares was merged. The one hundred shares were subsequently sold by H. & Co., in two separate lots of fifty shares each, and were regularly transferred on the books of the company. After the sale of the stock by H. & Co., a call for the payment of thirty per cent. was made upon it, which the original subscriber was sued for, and required to pay, with costs. In an action brought by him against H. & Co., to recover from them the amount he had thus been required to pay, it was HELD:

1st. That H. & Co., having transferred the stock prior to the call, were not liable.

2nd. That H. & Co., were under no implied obligation or promise that the shares transferred should not be embraced in a certificate with other shares, or sold in different parcels.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*John H. Handy,* for the appellant.

Under the charter of the company, and laws of Virginia, both Brinkley and the appellees were liable for the unpaid assessments, so long as the subscription to the stock was not paid up in full.

The charter of the National Express and Transportation Company is subject to the provisions of the general slawofe Virginia governing corporations. *Code of* 1873, *ch.* 57, *secs.* 26 *and* 29.

The construction of the charter of this company, and the general corporation law of Virginia, have been before

this Court several times.   *Glenn, Trustee vs. Williams,* 60 *Md.*, 93;  *McKim vs. Glenn, Trustee,* 66 *Md.*, 479.

Brinkley being liable to the company, under the Act, for all assessments called or to be called, his payment was *in invito,* and upon being made, an assumpsit arose in his favor to have his immediate assignees reimburse him, as for money paid for them, or rather an assumpsit arose on the transfer to the appellees as between him and them, that they should pay all future assessments.   See *Glenn vs. Williams,* 60 *Md.,* 93 ; *Nevill's Case, L. R.,* 6 *Ch. App. Cases,* 46; *Roberts vs. Crowe, L. R.,* 7 *C. P.,* 629, 636, 637 ; *Moule vs. Garrett, L. R.,* 5 *Exch.,* 132; *Walker vs. Bartlett,* 18 *C. B.,* 845 ; *Kellock vs. Enthroven, L. R.,* 8 *Q. B.,* 464, and *L. R.,* 9 *Q. B.,* 241, 243–248; *Johnson vs. Underhill,* 52 *N. Y.,* 210 ; *Brown vs. Hitchcock,* 36 *Ohio St.,* 680 ; *Hutzler vs. Lord,* 64 *Md.,* 538 ; *Glenn vs. Howard,* 65 *Md.,* 59.

*Bernard Carter,* for the appellees.

If the appellees are liable at all to the plaintiff, it can only be by virtue of some *implied promise,* there certainly being no express promise in the case.   There is no implied promise.

The legal relations of the parties, independently of any effect on those relations of the provision of the Virginia statute, 1873, Code, chapter 57, section 26, which declares that on any assignment the assignee and assignor shall each be liable for any instalments which may have accrued, or which may thereafter accrue, and may be proceeded against in the manner before provided, are well settled.

Shares of stock are personal property, and, as well as other personal property, may be transferred by the owners thereof, unless the transfer is restrained by the charter or articles of association.   *Thompson on Liabilities of Stockholders, sec.* 210; *Angell & Ames on Corp.,* 534; *Morawetz on Corp.,* (*2nd Ed.,*) *sec.* 164.

The obligation which the original subscriber to stock comes under to the corporation, by agreeing to take stock, is that "of paying all legitimate calls made during the continuance of the ownership." *Webster vs. Upton*, 91 *U. S.*, 67, 69.

This is the measure of his *duty*. His rights are to such dividends as are declared during said ownership. *Morawetz on Corp.*, (*2nd Ed.*,) *sec.* 162.

The legal consequence of a valid transfer of stock from the original subscriber to a transferee, is to place the said transferee, as long as he is the holder of said stock, and has not validly transferred it, and no longer, in the place of the transferror, both as to rights and duties. *Webster vs. Upton*, 91 *U. S.*, 69; *Bend vs. Sus. Bridge Co.*, 6 *Har. & J.* 132, 133; *Hall vs. U. S. Ins. Co.*, 5 *Gill*, 499.

The principle is thus fully established, that the liability to calls, is a constantly *shifting* one, resting on each assignee as to such calls as are made during the time he is the registered owner of the stock, and shifting from him the moment his transfer is made and accepted, and this by an *implied privity as between such transferees*, as well as between each of them and the company.

And the further principle is also established, that the rights and duties of such transferees are correlative; each transferee is, during the interval of his registered ownership, entitled to all the rights attending such ownership, and is therefore entitled to all dividends declared during such ownership.

The principle is succinctly stated by the Supreme Court of Michigan in *Merrimac Mining Co. vs. Bagley*, 14 *Mich.*, 505–506.

And in accordance with the principles therein stated, if the vendee fails to have stock, which he has purchased, transferred to him on the books of the company, and so leaves his vendor clothed with the legal title, and *because o his being so clothed*, he is made liable to the company,

for calls payable after the sale, the vendee is liable to the vendor for the money so paid by the vendee. The vendee is so liable to the vendor, because, and only because, he has failed to do what the agreement of sale impliedly required him to do, to wit, to transfer the shares to his own name. *Walker vs. Bartlett,* 86 *Eng. Com. Law,* 844; *Johnson vs. Underhill,* 52 *N. Y.,* 210, (*et seq.*); *Burnett vs. Lynch,* 5 *Barn. & Cress.,* 589; *Phil., Wilm. & Balto. R. R. Co. vs. Constable,* 39 *Md.,* 155; *Hutzler vs. Lord,* 64 *Md.,* 538.

ALVEY, C. J., delivered the opinion of the Court.

This was an action of assumpsit instituted by Joseph B. Brinkley, since deceased, against the defendants to recover money alleged to have been paid by the plaintiff, Joseph B. Brinkley, for the use of the defendants. Before the trial below Joseph B. Brinkley died, and John H. Brinkley, his executor, was made party plaintiff in his stead.

The case was tried before the Court upon an agreed statement of facts, upon which the Court decides as upon a special verdict or upon a demurrer. *Keller vs. The State,* 12 *Md.,* 322, 327. The judgment was for the defendants and the plaintiff has appealed.

The material facts agreed upon are these : Joseph B. Brinkley, the plaintiff's testator, subscribed for 20 shares of the capital stock of the National Express and Transportation Company, (a Virginia corporation,) of the par value of $100 per share, and paid at the time $5 per share on the same, receiving a certificate stating that fact, and that $95 per share still remained unpaid. Subsequently a call of ten per cent. was made by the company, and paid by Brinkley, making in all $15 per share that had been paid on the stock by Brinkley. Afterwards, that is, on the 9th of June, 1866, he sold these 20 shares of stock, through a broker, for the gross sum of $167.50, and thereupon he surrendered his certificate to the company for

cancellation, which was accepted by the company, and the transfer of the stock was regularly made on the books of the company to the defendants. A new certificate was issued to the defendants for 100 shares, in which were included the 20 shares, and 80 shares more, purchased from other persons, whereby the separate identity of the 20 shares was merged. A few days thereafter, the defendants sold the 100 shares, thus transferred to them, in two lots or parcels, of 50 shares each, one of such parcels to McKim & Co., and the other to Josiah Reynolds, and the certificate was surrendered, and the shares were regularly transferred on the books of the company to the respective purchasers.

The company soon thereafter became embarrassed, and on the 26th of Sept., 1866, made an assignment for the benefit of its creditors. The Chancery Court in Richmond, Virginia, having assumed jurisdiction over the trust, and the affairs of the company, directed a call of 30 per cent. to be made upon the stock of the company, for the purpose of paying debts, &c. And the trustee appointed by the Court, whose duty it was to collect this call of 30 per cent., demanded that amount of Joseph B. Brinkley, in respect of the 20 shares subscribed for by him. Brinkley made demand upon the defendants that they should pay the amount, or hold him harmless. This they refused to do, and the trustee proceeded by action at law against Brinkley, and recovered the amount demanded, as the call legally payable in respect of the 20 shares of stock; and which amount was paid by Brinkley to the trustee.

This action is now brought to recover of the defendants the amount thus paid, with the costs of suit, as so much money paid to their use, under the statute law of the State of Virginia.

The question of the right of the plaintiff to recover as against the defendants, arises under certain provisions of the statute law of Virginia, for the regulation and gov-

ernment of joint stock companies in that State, where the corporation was organized, and in reference to which law the stock was purchased and held. Those provisions of the statute are found in the Code of that State, as published in 1860, and 1873, and, in the latter edition, they appear as sections 26 and 29, of chapter 57.

Section 26 provides, that "No stock shall be assigned on the books without the assent of the company, until all the money which has become payable thereon shall have been paid; and on any assignment, the assignee and assignor *shall each be liable* for any instalment which may have accrued, or which may *thereafter accrue,* and may be proceeded against in the manner before provided."

Section 29 provides, that "If any person shall for valuable consideration, sell, pledge, or otherwise dispose of any of his shares of stock to another, and deliver to him the certificate of such shares, with a power of attorney authorizing the transfer of the same on the books, the title of the former (both at law and in equity) *shall vest in the latter,* so far as may be necessary to effect the purpose of the sale, pledge, or other disposition, not only *as between the parties themselves,* but also as against the creditors of and subsequent purchasers from the former, subject to the provisions of the 26th section."

The Court has recently held, in the case of *McKim & Co. vs. Glenn,* 66 *Md.,* 479, that a stockholder, in this same company, under the provisions of the statute just recited, by transferring his stock to an assignee, did not relieve himself from liability to the company for *subsequent* calls upon the stock; but that he remained liable not only for past but all future calls, until the stock was fully paid up, although the assignee became liable also. This is so provided by the express terms of the statute.

This provision of the statute, however, is a radical departure from the ordinary common law principle that governs and regulates the rights of assignor and assignee

of stock in a joint stock company, and their relation and obligation to the company, in respect of the stock transferred. According to the ordinary well settled rule upon the subject, the law implies a promise or duty by every holder of stock in a joint stock company, to pay the full par value of the stock as it may be called for ; and it follows, as a matter of course, that an assignee of the stock, by coming into privity with the company, by having the stock transferred to him on its books, is equally liable as the former holder was before the transfer. The assignee takes the shares with all their rights and liabilities, so that if a liability to a loss has been incurred by the company before he purchased the stock, he may be called upon to contribute thereto as soon as he has accepted a transfer of the shares and become a shareholder in the concern. The liability to pay the calls made upon the stock *after the transfer* is shifted from the outgoing to the incoming shareholder ; the transfer of stock working a complete novation of the contract of membership, the transferee being substituted to the place of the transferror, with all the rights and liabilities incident to the holding of the shares. This is well established by the decisions of this Court, as it is by the decisions of other Courts of the highest authority. *Bend vs. Susq. Bridge & Bank Co.,* 6 *H. & J.,* 128; *Hall vs. Ins. Co.,* 5 *Gill,* 484; *Webster vs. Upton,* 91 *U. S.,* 69; *Cape's Ex'rs Case,* 2 *De G., M. & G.,* 562.

But the question here is, notwithstanding this general well-settled principle of the common law, whether by force of the statute of Virginia, which we have recited, there is any *implied obligation or duty* on the part of an assignee to indemnify and save harmless his immediate assignor of the stock, as against calls made by the company *subsequent* to the time when such assignee has transferred the stock to other parties? or whether such implied obligation to indemnify exists in favor of such assig-

Brinkley, Ex'r *vs.* Hambleton & Co.

nor as may have been required to pay, only as against the holder of the stock at the time of the call made by the company.

This is a question not free from difficulty; but upon the best consideration that we have been able to give it, we think the implied obligation to indemnify previous holders of the stock should, upon principle, be confined to the holders of the shares at the time of the call made by the company.

The general principle upon the subject is well stated by Mr. *Leake*, in his work *on Contracts, page* 41, where he says : " Where the plaintiff has been compelled by law to pay, or, being compellable by law, has paid money which the defendant was *ultimately liable to pay*, so that the latter obtains the benefit of the payment by the discharge of his liability ; under such circumstances the defendant is held indebted to the plaintiff in the amount." This passage of the work just named was quoted with approval by the Court in the case of *Moule vs. Garrett, L. R.,* 7 *Exch.,* 101, in the Exchequer Chamber. And in the same case, it was said by WILLES, J., " that where two persons are under an obligation to the same performance, though by different instruments, if both share the benefit which forms the consideration, they must divide the burden ; but if one only gets the benefit he must bear the whole." And so where there is a primary and secondary liability—if the party only secondarily liable is required to pay, he is entitled to be indemnified or reimbursed by the party primarily liable. *Roberts vs. Crowe, L. R.,* 7 *C. P.,* 629.

This principle is furnished apt illustration in those cases where it has been held that an assignee of a lease by mesne assignments is under an obligation to indemnify the original lessee against breaches of covenant in the lease, *committed during the continuance of his own tenancy,* but not for any subsequent breach ; as in the cases of *Burnett vs. Lynch,* 5 *B. & Cr.,* 589, *Moule vs. Garrett, L. R.,* 5

*Exch.*, 132, and same case in Exchequer Chamber, *L. R.*, 7 *Exch.*, 101.

And so in those cases where there has been an assignment of stock, but from neglect, or omission from any cause, to have the actual transfer made on the books of the corporation to the assignee, and the assignor remains the nominal owner merely, and, because of that fact, is required to pay calls upon the stock, there is an implied obligation on the part of the assignee to indemnify such nominal owner of the shares, against calls made *during the time* that the former remains virtually and potentially the owner of the shares, though not registered on the books. This is the principle of the cases of *Walker vs. Bartlett*, 18 *C. B.*, 845, *Johnson vs. Underhill*, 52 *N. Y.*, 203, and the recent case decided by this Court of *Hutzler vs. Lord*, 64 *Md.*, 534. In such cases, and, indeed, in all cases, the assignee takes the shares subject to all the burdens and liabilities attached to or growing out of the beneficial ownership of the shares, and the law implies an obligation or promise on his part, that those burdens and liabilities, incumbent upon himself while he holds the stock, shall not be imposed upon the assignor. And such is the implied obligation of every assignee of stock. *Johnson vs. Underhill, supra.*

Now, it is very true, that by the statute law of Virginia, each and every assignor and assignee remains liable to the company for the calls that may be made upon the stock, until the full par value be paid. But, as between the assignor and assignee of the shares, there is a primary and a secondary obligation. The primary obligation to pay calls, by the principles of the common law, rests, as we have said, upon the actual owner and holder of the stock, during the time of his ownership; and any previous assignor whom the company might require to pay such calls, would pay by force of his statutory obligation, *and* because of the failure of the holder of the stock to perform *his duty*

*or obligation*, assumed upon the transfer of the stock to him; and not because of any failure of performance of duty or obligation, either express or implied, by those who had held the stock before the last transfer. Any payment, therefore, of calls, by any previous holder of the stock, must, in the contemplation of the law, be made for the party whose primary duty and obligation it was to make such payment, and not for the special benefit of the immediate transferee of the party who has been required to pay by force of the statute, calls made upon the stock *after* his transferee has become an assignor of the stock to another party. In other words, there is no implied promise or obligation on the part of an assignor of stock to pay calls, made subsequent to his transfer of the shares, for the relief of a prior assignor, though the latter may have been required to pay such calls to the company. Nor is there any implied obligation or promise that the shares transferred shall not be embraced in a certificate with other shares, or sold in different parcels.

In the argument of this case, much reliance was placed, by the counsel for the plaintiff, upon the decision of the case of *Kellock vs. Enthoven,* decided by the Queen's Bench, and afterwards affirmed in the *Exchequer Chamber,* *L. R.,* 8 *Q. B.,* 458, and *L. R.,* 9 *Q. B.,* 241. That case arose under Statute 25 and 26 Vict., c. 89, sec. 38, known as the Companies Act. By the 38th section of that statute, every present and past member of the company is made liable to contribute to the assets of the company to an amount sufficient to pay debts and liabilities of the company, and the costs and expenses, &c., and for the payment of such sums as may be required for the adjustment of the rights of the contributories among themselves. But no past member shall be liable to contribute to the assets of the company, if he has ceased to be a member for one year prior to the commencement of the winding up; and no past member is to be liable to contribute in

Brinkley, Ex'r *vs.* Hambleton & Co.

respect of any debt or liability of the company contracted after the time at which he ceased to be a member ; nor shall any past member be liable to contribute to the assets of the company, unless it appears to the Court that the existing members are unable to satisfy the contributions required to be made by them.

It was under this provision of the statute that the case of *Kellock vs. Enthoven* was decided ; and that case certainly does hold that the defendant, an assignee of shares from the plaintiff, was liable to indemnify the latter against calls made *after* the defendant had transferred the shares to another. But the reasoning upon which that conclusion was founded is not such as we are prepared to adopt. If the stock had not been transferred by the defendant in that case, the payment of the calls by the plaintiff would have been made for the defendant's benefit, and the case have been exactly within the reason and principle of *Roberts vs. Crowe, L. R.,* 7 *C. P.,* 629 ; but as the stock had been transferred to another, such payment, according to our view, was for that other's benefit, and not the defendant's, any more than it was for the benefit of any other antecedent holder to the last transferee of the stock, whom the company might have required to pay the calls.

Being of opinion that the plaintiff has shown no sufficient cause of action to entitle him to recover, we must affirm the judgment of the Court below.

*Judgment affirmed.*

(Decided 17th March, 1887.)