### RICHARDS v. ROBIN et al.

(Supreme Court, Special Term, New York County. July 20, 1914.)

1. PRINCIPAL AND AGENT (§ 146*)—UNDISCLOSED PRINCIPAL—AGENT'S LIA-
BILITY.

An agent, though known to be such, when dealing in his own name, without disclosing the name of his principal, is personally bound by his contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 521–527; Dec. Dig. § 146.*]

2. CORPORATIONS (§ 143*)—STOCK—TRANSFER—OWNERSHIP.

Until transfer of stock on the books of the corporation is in fact made, the seller who is the record owner is the nominal owner, and is to be treated as the trustee of the stock for his purchaser, the purchaser taking the shares subject to all the burdens and liabilities attached to or growing out of them; the law implying an obligation or promise on his part to see that those burdens and liabilities will not come on the seller.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 529, 532, 534, 536; Dec. Dig. § 143.*]

3. CORPORATIONS (§ 265*)—STOCKHOLDERS—DOUBLE LIABILITY—ENFORCEMENT
—PARTIES—STOCKBROKERS.

Where brokers purchased bank stock without disclosing the name of their principal and later delivered the certificates to the principal, who subsequently became insolvent, without having the stock transferred on the books of the bank, so that the purchaser appeared as the stockholder of record, the sellers were entitled to insist in an action against them to enforce statutory liability after the failure of the bank against them as the stockholders of record, that the brokers should not be dismissed as parties defendant, in order that, if it was found that the sellers were liable as stockholders of record, they might have it determined in the same action, whether they were not entitled to indemnification from the brokers by whose negligence they were left in that position.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1101–1125, 2275; Dec. Dig. § 265.*]

Action by Eugene L. Richards, as State Superintendent of Banks, against Joseph G. Robin and others. Motions by defendants Tefft, Reeves, and Carpenter, and by defendant William H. Nash for judgment on pleadings. Denied.

See, also, 148 N. Y. Supp. 1141.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Breed, Abbott & Morgan, of New York City, for plaintiff.

William R. Maloney, Jr., of New York City (Edward E. McCall, of New York City, of counsel), for defendants Tefft, Reeves, and Carpenter.

Enos S. Booth, of New York City (Vance Hewitt, of New York City, of counsel), for defendant Nash.

Curtis, Mallet-Provost & Colt, of New York City, for defendants Battles & Heye.

Howard Payson Wilds, of New York City, for defendant Hall.

Blandy, Mooney & Shipman, of New York City (Edmund L. Mooney and Charles T. B. Rowe, both of New York City, of counsel), for defendant Edmund L. Mooney.

Osborn, Lamb & Garvan, of New York City (Gilbert D. Lamb, of New York City, of counsel), for defendant Thomas Kelly.

George W. Carr, of New York City, for defendant Norman Seymour.

GIEGERICH, J. This action is brought by the Superintendent of Banks of the State of New York for the purpose of enforcing the statutory liability against the defendants as stockholders of the failed Northern Bank of New York. Some of the defendants who were stockholders of record at the time the bank failed set up in their answers that they sold their stock in good faith prior to the insolvency to the firm of Tefft & Co., stockbrokers, composed of the defendants Tefft, Reeves, Carpenter, and Nash. The first three named have served an amended answer, and the last named has also answered separately, and in their amended answers to the complaint the said defendants pleaded as one defense that prior to the time when they were brought into the action the plaintiff had examined them, as members of the said firm, by their cashier, pursuant to a subpœna, and had stipulated on that examination that no liability should attach to that firm by reason of any facts brought out on such examination, and which defense further alleges that all the facts affecting the defendants constituting such firm of stockbrokers set forth in the complaint were brought out on such examination. Another defense set up by the same defendants is that the shares of stock of the failed bank which they had purchased of the other defendants were bought by them as brokers for one James T. Wood. The plaintiff's replies denied that the facts alleged in the complaint and affecting the defendants just referred to were brought out on that examination, but admitted that the fact that in making the purchases referred to they acted as brokers for the said Wood was brought out. The defendants so constituting the firm of stockbrokers, and answering as above stated, now separately move for judgment on the pleadings, claiming that the complaint and their amended answers, coupled with the replies, show that they are entitled to the relief demanded. It would be unnecessary upon this motion to enter into the question of what effect, as between the plaintiff and the moving defendants, the stipulation referred to may have, if any, were it not for a question, not referred to in any of the briefs, as to what effect such exoneration or release might have upon the liability of the

other defendants who were left as the holders of record of such stock. I am satisfied that the pleadings do not show such a release. The only fact which the plaintiff admits was brought out upon the examination was the fact that the moving defendants acted as agents in the transaction, which is not a fact that on any theory can be said to impose liability, but which, on the contrary, those defendants seek to make use of to relieve themselves of liability.

Passing now to the relations between the moving defendants and their codefendants from whom they purchased the stock in question, such codefendants claim that as the members of the stockbroking firm did not disclose what principals, if any, they were acting for in making the purchase they are themselves liable as principals.

[1] That an agent, even though known to be such, when dealing in his own name and without disclosing the name of his principal, is personally bound by his contract, is abundantly established by the authorities. Meyer v. Redmond, 205 N. Y. 478, 98 N. E. 906, 41 L. R. A. (N. S.) 675, and the numerous cases there cited.

[2] It is also established that until the transfer upon the books of the corporation is in fact made the seller is the nominal owner and is to be treated as the trustee of the stock for his purchaser, and that the purchaser of the shares of stock takes them subject to all the burdens and liabilities attached to or growing out of them, and that the law implies an obligation or promise upon his part that those burdens and liabilities will not come upon the seller. Johnson v. Underhill, 52 N. Y. 203, 211; Sigua Iron Co. v. Brown, 171 N. Y. 488, 500, 64 N. E. 194; Grissell v. Bristowe, 3 Com. Pleas Law Rep. 112. In Grissell v. Bristowe, supra, it is said:

"The very object and essence of the transaction was that the shares should pass from the vendor, and in such a contract of sale of shares it seems to us that it must be implied that the plaintiff would execute and deliver a transfer to the defendants or their nominees and that, on the other hand, the defendants would pay the price and accept and register a transfer of the shares, and with a further undertaking that the defendants would indemnify the plaintiff against calls which the plaintiff might be called upon to pay, if and so long as the transfer was not registered. The very essence of a contract of sale and purchase in the case of shares is that one party shall divest himself of and the other acquire, in the name of himself, the ownership of the shares, and that the seller shall relinquish and be relieved from and the purchaser assume all future benefits and liabilities in respect of the shares."

This language is quoted with approval in Johnson v. Underhill, supra, 52 N. Y. at page 212. The latter case, laying down the rule above stated, is cited with approval in Sigua Iron Co. v. Brown, supra, 171 N. Y. 500, 64 N. E. 194.

[3] If therefore the members of the stockbroking firm purchased the various stockholdings in question without disclosing the name of the principal for whom they were acting and later on turned the certificates over to the principal for whom they were acting (and who, it may be remarked in passing, is now insolvent) without seeing to it that the transfer was duly made upon the books of the bank so that the purchaser should appear as the stockholder of record and the sellers should no longer appear as such, it would seem clear that in this action in equity in which the plaintiff is seeking to charge liability upon such for-

mer owners on the ground that they appear upon the books of the failed bank as stockholders of record, such former owners are entitled to insist that the defendants who are seeking to escape from the action by these motions should be retained in order that if it is found that they are liable as stockholders of record they may have it determined in the same action whether they cannot have indemnification from their codefendants who brought them and left them in a position where they were exposed to such liability.

In this view the cases of Brinkley v. Hambleton & Co., 67 Md. 169, 8 Atl. 904, and Rogers v. Toland, 43 Pa. Super. Ct. 248, cited by the defendants Battles and Heye, are clearly inapplicable.

The moving defendants claim that, as the pleadings show that they are entitled to judgment against the plaintiff, their application should be granted, and that they should not be forced to meet in this action claims urged by other defendants when they are under no liability to the plaintiff. In support of this contention they rely upon Leske v. Wolf, 154 App. Div. 233, at page 236, 138 N. Y. Supp. 859, at page 860, and quote from that case the following language from the opinion:

"It seems to us entirely clear that, if the plaintiff failed to set up a good cause of action for the foreclosure of his mechanic's lien, the court was not in a position to .go forward with the trial of the action for the purpose of determining the issues attempted to be raised by the several defendants as between themselves."

The real theory on which the court decided that case is not contained in the language above quoted, but in the language which follows, namely:

"The plaintiff had no interest in setting aside the mortgages upon the premises unless he had a good and valid lien against the same, and the defendant owners of the premises had no interest in the lien unless it was in fact a lien upon their lands. If there was no lien, then there was no controversy in which the plaintiff and defendants were interested, and the only purpose of section 521 of the Code of Civil Procedure is to bring in all the parties who are to be affected by the judgment which the plaintiff seeks and to adjust the controversy as between all the parties thereto."

In that case the foundation of the plaintiff's claim was a lien, just as in this case the foundation of the plaintiff's claim is a stockholder's liability, and if in this case it appeared that the plaintiff had no valid claim against any of the defendant stockholders, then this case would be similar to the one just cited. In my opinion this case is an excellent illustration of the class of cases which the court in the language above quoted said it was the purpose of section 521 of the Code of Civil Procedure to embrace, and the plaintiff has followed sound equitable practice in bringing in all the parties who are to be affected by the judgment which he seeks, in order that the controversy as between all the parties thereto may be adjusted.

The motions are therefore denied, with $10 costs to the plaintiff and to each of the defendants separately appearing in opposition to the motions as against the defendants Tefft, Reeves, and Carpenter, and the defendant William H. Nash.