This is an action in assumpsit to recover an assessment paid by the plaintiffs upon shares of stock in the Sixth National Bank, a national banking association within the laws of the United States of America. The Pennsylvania Company for Insurances on Lives and Granting Annuities is the plaintiff in each of the three cases as trustee for three separate trust estates. The original defendant is E. W. Clark Company who as copartners are stock brokers and dealers in securities. The first additional defendants are Alexander Conn and the Girard Trust Company, executors under the will of John L. J. Belzer, a deceased partner in Belzer Company, a firm of stock brokers and dealers in securities which at the time of the transactions involved in this litigation was composed of John L. J. Belzer, John J. Belzer, Charles H. B. Phillips and J. Leroy Merscher. Charles H. B. Phillips and J. Leroy Merscher were also joined as first additional defendants. In turn Albert M. Greenfield and Henry W. Balka, trustee for Jerome Roy Balka, were joined as second additional defendants. *Page 435 
The facts are not in dispute, having been stipulated of record. In January, 1933, The Pennsylvania Company as trustee was the registered and real owner of 215 shares of stock of the Sixth National Bank of Philadelphia. On or about the 17th of January the plaintiffs sold and transferred all the shares to E. W. Clark Company. The purchaser acted as principal in the transfer and instead of charging a normal brokerage commission obtained compensation by reselling the shares to the additional defendant at a profit of 50 cents per share. In negotiating with the plaintiff, the defendant had no agreement or understanding that any commission was to be charged. The share certificates were endorsed in blank by the plaintiff as registered owner and delivered to the defendant. Thereafter the shares of stock were sold to Belzer Company, the vendor guaranteeing the signatures to the powers on the back of the certificates.
The trial court found that E. W. Clark Company were the real owners of the shares of stock at the time of purchase and resale to the subsequent purchasers. No exception has been taken to that finding which is firmly established by the evidence. In negotiating the sale to Belzer Company both parties dealt with each other as principals, although it is admitted that at the time of the purchase Belzer Company were acting upon oral instructions of their customer, one of the second additional defendants, Albert M. Greenfield, who became the real owner of 200 shares of stock. These shares were subsequently transferred to a nominee of the purchaser, John W. Daniels, and thereafter on February 24, 1933, transferred to Sarah B. Mayer, in whose name they were registered. The remaining 15 shares purchased by Belzer Company were sold to Henry W. Balka, trustee for Jerome Roy Balka and transferred of record on February 9, 1933.
On February 28, 1933, the Sixth National Bank of Philadelphia suspended payment to its depositors and ceased transacting its normal banking business. On *Page 436 
that date the institution was unable to meet its obligations as they became due in the ordinary course of business. On March 14th, 1933, a conservator was appointed who remained in charge until the appointment of a receiver on September 29th, 1934. The Comptroller of Currency on November 22d 1934, levied an assessment upon the stock. Suit was instituted against the plaintiffs and judgment recovered: Willing v. PennsylvaniaCompany, 21 F. Supp. 233 (E. D. Pa. 1937). The said judgment was paid by the plaintiffs and this suit was instituted against its transferee for indemnification.
The trial court in its 30th Finding of Fact stated that at the time of the assessment the only registered owners were the Pennsylvania Company, John W. Daniels, strawman for Albert M. Greenfield, Sarah B. Mayer and Henry W. Balka, trustee for Jerome Roy Balka. This finding is subject to the qualification that these were the only registered owners within the 60 day period before the closing of the institution. All transfers involved in these suits beginning with the sale made by the plaintiffs occurred within 60 days prior to the failure of the bank to meet its obligations.
Succinctly, the facts are these. The plaintiffs within 60 days before the closing of the Sixth National Bank but not at the time of the closing, were the registered and real owners of certain shares of stock in that bank. Within that period before the closing of the bank the plaintiffs transferred their shares to the original defendants who purchased as principals and accepted delivery of the share certificates endorsed in blank and became the real owners thereof. The defendants retransferred these shares to others within the 60 day period and delivered the certificates without having become registered owners, and these purchasers in turn further transferred the shares to the second additional defendants.
The trial judge held that the plaintiffs could recover only against the real or registered owners at the time *Page 437 
the Sixth National Bank closed, and that the intermediate transferees were not liable to the plaintiffs.
The findings of fact were filed on June 28, 1939, and exceptions thereto were filed by the plaintiffs on July 12th. The original defendant thereupon filed a motion and rule to strike off the plaintiffs' exceptions as violating Rule 231 of the Court of Common Pleas of Philadelphia County which requires that exceptions to findings of a judge sitting without a jury be filed within four days after the findings become effective. An answer to this motion was filed by the plaintiffs, together with a petition praying that the exceptions be marked filed as of July 3rd, 1939, nunc pro tunc. In the answer it is averred that the plaintiffs never received notice of the filing of the opinion by the Prothonotary as required by Section 3 of Rule 231 and further that compliance with the rule was impossible because the attorney for the plaintiffs in one of the cases was absent from the jurisdiction until the period for filing exceptions had expired. Since the averments of the answer must be taken as admitted in the absence of depositions, it would appear that the motion and rule of the original defendants should be dismissed. Moreover, the importance of the substantive rights in this litigation demand that the merits be considered and this court exercise its power to waive strict compliance with its rules: Lance v. Bonnell, 105 Pa. 46. The petition for allowance to file the exceptions nunc pro tunc must, therefore, be granted.
The question to be determined is whether a transferor of national bank stock who is liable under section 23 of the Federal Reserve Act of December 23, 1913, by reason of his ownership of such stock within 60 days prior to the date of the failure of the institution to meet its obligations, is not entitled to be indemnified by the transferee, notwithstanding the fact that prior to the failure the transferee has himself again sold and transferred the stock. Both the plaintiff and defendant agree that *Page 438 
the real owner at the time of the failure of the bank must ultimately bear the burden of the assessment. The defendant contends that the plaintiffs should be required to recover directly from the present owner as the one primarily liable, and that the defendant has no obligation to the plaintiffs since the former was not the owner at the time the institution closed. The plaintiffs contend, on the other hand, that the law must imply an obligation on the part of the defendant to indemnify the plaintiffs since the latter by paying the assessment relieved the defendant of that burden, and that the plaintiffs have the alternative of either suing the present owner directly or suing its immediate transferee.
Before determining the liability of the transferees inter se, it is essential that the liability of each of the transferees to the receiver of the bank be determined. Section 23 of the Federal Reserve Act of December 23, 1913, 38 Stat. 273, 12 U.S.C.A. 64, provides: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within 60 days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."
It is clear that any one who holds the stock of a national bank as real owner within 60 days of its failure is liable to the receiver for an assessment as provided by the act. It has been held that a transferor of national *Page 439 
bank stock incurs this liability as long as the transfer was made within 60 days of the bank's failure: Collins v. Caldwell,29 F.2d 329, Fletcher v. Porter, 20 F.2d 23. The liability arising out of the statute rests upon the receipt and acceptance of the share of stock and is, therefore, in a qualified and limited sense contractual in its nature. The transferor in effect admits his liability and responsibility for an assessment and when he transfers it to another person who thereby assumes that liability in effect states that although he has parted with ownership his contingent liability continues for 60 days and he thereby agrees that if within that period the liability matures he will see that it is satisfied. The primary character of the transferor's obligation in relation to the receiver is not altered and remains in its essence a primary obligation regardless of the transfer. The receiver does not have to institute legal proceedings against the transferee nor is he required to prove the latter's insolvency before proceeding against the transferor. The mere failure on the part of the transferee to pay voluntarily is sufficient to justify an action against the transferor:Karraker v. Ernest, 4 F.2d 404.
The liability imposed by the statute does not depend upon registration on the books of the company but is imposed upon any person who holds the stock during the 60 day period preceding the failure either as real or registered owner. The uncontradicted facts establish that the original defendant, E. W. Clark Company, in purchasing the shares and selling them at a profit acted as principal and was the real owner between the time of the transfers. Title passed by delivery since the share certificates were endorsed in blank by the plaintiffs. Furthermore, it was held in Root v. Barnes (E. D. D.C. Pa. Sept. 1938, No. 20836) that the fact that the transferee was a dealer in securities did not relieve him of liability to the receiver for an assessment as long as he owned the stock at any time during the 60 day period. *Page 440 
The cases [sic] of Barbour v. Thomas, 86 F.2d 510 andLaurent v. Anderson, 70 F.2d 819, cited by the defendant to disprove his liability to the receiver are clearly distinguishable. In the former case it was held that an owner of participation certificates in a trust estate consisting of national bank stock was liable to the receiver for the assessment. As between the parties, the trustee and the cestui que trust, the court found that the latter were the real owners. In the second case a stockholder of a holding company whose capital consisted solely of bank stock was also held liable to the receiver, for the court decided that the stockholders of the company were the actual owners of the bank stock. These cases concerned which of two parties was the real owner at one particular point of time when title to the stock was split, and the issue to be determined was who held the beneficial rights. In this case, as in the case of Root v.Barnes, supra, the defendants had sole and complete title at the time they received the transfer of the share certificates although it is true that they did not intend to retain their ownership for any length of time. During that brief interval, however, they could have decided not to re-transfer the shares and exercised all the beneficial rights of ownership which they possessed.
It is, therefore, apparent that the Federal Reserve Act imposed equal and coexistent liability to the receiver of the national bank upon all persons who were either the real or registered owners of the stock within 60 days before the failure of the bank, and accordingly, he may have proceeded against any person falling within the established categories upon the mere failure on the part of the transferee to pay.
Having established the equal liability of all owners of the stock to the receiver, the second question to be resolved is the rights of one of those owners, who was unfortunately chosen by the receiver to satisfy the assessment, against subsequent transferees. This presents a problem of first impression not only in Pennsylvania *Page 441 
but also under section 23 of the Federal Reserve Act. InKellock v. Enthoven, L. R. 9 Q. B. 241 (1874), it was decided that a registered shareholder could recover from his transferee, even though the latter had re-transferred the shares, for an assessment which was levied after the association had failed. See also Boultbee v. Gzowski, 29 Can. Sup. Ct. 54 (1898). The English law, however, grants to transferors the right of indemnity for all obligations to the corporation arising at a future date, even though the transferee himself is not liable to the corporation after he had retransferred his shares. Spencer v. Ashworth, Partington Co., 1 K. B. 589 (1925).
An analogous situation was decided in the case ofBrinkley v. Hamilton Co., 67 Md. 169, 8 A. 904. In that case the plaintiff subscribed to shares of stock in a Virginia corporation. Only a fraction of the par value was paid, the balance being subject to call. The shares were sold to the defendant who subsequently re-transferred them. When the corporation incurred financial difficulty and executed a general assignment, the trustee levied an assessment for the balance of the par value and collected it from the plaintiff under a Virginia statute which the court interpreted as imposing liability on each and every assignor and assignee of the stock until the par value was paid. The plaintiff's right of indemnity against his transferee was denied, however, on the ground that only the owner of the stock at the time the assessment was levied had the implied obligation to reimburse the plaintiff. The court stated that the primary obligation rested upon the actual owner of the stock and that any previous assignor who was required by the company to pay did so by reason of his statutory obligation and because of the failure of the owner of the stock at the time of the assessment to perform his duty or obligation assumed upon the transfer of the stock to him, and not because of any failure of performance of duty or obligation either express or implied, by those who had held the stock before the last *Page 442 
transfer. Therefore, payment could only be considered in relief of the present owner and not in relief of the immediate transferees. We are not persuaded by the ruling and the reasons therefor. Since the statute had been construed as imposing liability on each and every assignor and assignee, the obligation of that plaintiff was just as much a result of the failure of the intermediate transferees to perform as it was a result of the failure on the part of the last transferee to pay. Since this is a decision of another jurisdiction and does not involve the present Federal Reserve Act we do not deem ourselves bound by it.
Both the plaintiff and defendant have cited the decisions in the cases of Rogers v. Toland, 43 Pa. Super. 248, andHuegle v. Bean, 43 Pa. Super. 352. These cases both involve the same set of facts but are not controlling or determinative of the present problem. The plaintiffs therein were registered owners and subscribers to corporate stock of which 10% of the par value had been paid. The shares were sold to the defendants who transferred them to others before the corporation became insolvent. An assessment was levied and collected from the plaintiffs who sued for reimbursement. Recovery was denied on the ground that there was no implied obligation between the parties. In that case, however, the defendants having transferred their stock prior to the insolvency were not liable to the receiver. The payment by the plaintiff, therefore, could in no way inure to their benefit since they were no longer the owners, nor could it relieve them of any liability. In distinguishing the English cases cited supra, the court stated in Rogers v. Toland, supra, at page 258-259: "We may remark, however, that under the English statute both assignor and assignee were liable to the company. It chose to collect from the former and the question involved was whether under the circumstances he could recover from his assignee. Here the plaintiff seeks to make responsible one who neither at common law nor *Page 443 
under any statute was ever liable to the company." In that case the plaintiff could have imposed liability on his transferee by requiring registration if when he transferred the stock he did so by a special or restricted endorsement. Such action in the case now before us would not have increased the liability of the transferee, or destroyed that of the transferor since all persons were liable to the receiver if they were real owners, whether registered or not. The decision in the case ofTrevor v. Perkins, 5 Wharton 244, cited by the plaintiff to support the theory of an implied contract is not conclusive. In that case the plaintiff recovered indemnity for an assessment from a transferee who in turn had re-transferred not on the basis of an implied contract but by reason of an express contract. By way of obiter dictum the court stated: "I am even inclined to think that such an agreement would in equity be implied as intended by the parties from the nature of the transaction; and that in the case of an assignee selling as well as a lessee." The opinion does not indicate, however, whether defendant was directly liable to the corporation and if he were not, this statement has been overruled by the decision in the case of Rogers v. Toland, supra.
Other cases have been cited as controlling the determination of this problem. The case of Broderick v. Aaron, 264 N.Y. 368,191 N.E. 19, involved a situation similar to the one now before this court, and an implied contract of indemnity between a transferor and transferee was not recognized, but this case is similar to that of Rogers v. Toland, supra, for under the New York statute only stockholders of record and owners at the time of the bank's failure are liable directly to the receiver. Intermediate transferees are not. Broderick v. Alexander,268 N.Y. 306, 197 N.E. 291, where recovery was granted, turns on the fact that the court found that the transferee was still the owner. Lesassier v. Kennedy, 36 La. Ann. 539, involved a situation similar to that of Rogers v. Toland, supra, and reimbursement was *Page 444 
denied since the defendant was not liable directly to the receiver. Ward v. Simon, 23 F. Supp. 117 is distinguishable since the court found that the transfers involved were made after the bank had failed. Although the court referred to transfers made prior to the failure of the bank, it is questionable whether it was referring to an assignee who had re-transferred his shares rather than to one who was still the owner.
As a result of the dearth of pertinent and controlling authority on the precise problem presented, the question must be considered de novo. The decisions of this Commonwealth establish that a transferee is not obliged to reimburse his transferor for an assessment imposed by law upon the latter if the former has in turn disposed of the stock, where the transferee is not liable to the corporation and its receiver for the assessment. Is the additional fact that the transferee remains liable to the corporation and its receiver after the transfer, a sufficient basis on which the court must imply an obligation of indemnity between the parties?
If liability was predicated on the theory that the transferee acquired the benefits and, therefore, must bear the correlative burdens, it might properly be determined that the law would not be compelled to imply the obligation to effectuate equity and justice, since the possibility of benefits was extinguished by the subsequent transfer. Liability, however, is not predicated upon the benefits received from ownership of the stock, but rather by reason of the statute which imposes an obligation on the owner that continues for 60 days after he has transferred the shares. It is true that the burden should ultimately fall upon the present owner, but it does not follow that the plaintiff's sole remedy must be confined to the owner at the time of the failure of the bank. The defendant fails to appreciate that the receiver if he deemed it advisable might have sued the defendant for the assessment and recovered a judgment. To the extent that the transferee failed to meet his liability *Page 445 
to the receiver the plaintiff was obliged to make payment. This alone is a sufficient reason for implying an obligation of an indemnity to the transferor. The significant fact is that both the plaintiff and defendant had the same liability to the receiver and the plaintiff's obligation matured when the defendant failed to pay the assessment. Therefore, it is equitable to allow the transferor to recover indemnity from his transferee who in a sense caused the former's liability to accrue. The latter, of course, acquires the same right in turn against his transferee. This situation is essentially different from that of a transferee who has no liability to the receiver and who consequently is not in a position to be relieved by his transferor of the statutory burden.
The right of the plaintiff in this action exists independently of the Federal Reserve Act. The proviso contained therein that Section 23 does not affect the recourse which the shareholders upon whom liability is imposed might have against the registered owner at the time of failure, does not limit the right of the one who pays to recovery against the registered owner at the time of transfer. The intention of this provision is not to restrict any of the rights of indemnification. The right of the plaintiff, therefore, depends upon what is sometimes known as quasi-contract, i. e., a promise implied by law to effectuate justice. The Restatement on Restitution provides in Section 76 "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." As between the plaintiff and defendant, section 23 of the Federal Reserve Act infers that the obligation should have been discharged by the transferee since the transferor is only liable to the extent that the transferee fails to make payment. See Early v.Richardson, 280 U.S. 496, at 498, wherein the court stated: ". . . as between seller and purchaser, *Page 446 
the purchaser alone became liable for any assessment thereafter imposed. . . ."
Certainly, the equities are in favor of the Pennsylvania Company who should not be required to bear the entire burden. Every purchaser who acquired the stock in point of time nearer to the date of failure should be in a less favorable position since the possibility that he might have been the owner at the time of failure, but for factors beyond his control, increases.
The problem may be resolved in another manner. The burden of recovering from a stockholder at the time of failure should be imposed upon his immediate transferor. It is apparent that if the intermediate transferees are absolved of all liability the transferor in the position of the plaintiff will have a difficult task of discovering the identity of the ultimate transferee and even if he is successful in ascertaining the identity may find him to be a person without financial responsibility. The one who sells to such an insolvent certainly should be compelled to suffer the consequences of his act. Furthermore, it is comparatively simple for each transferor to reach his immediate transferee.
These reasons are not applicable to those cases in which the right of indemnity has been denied, where the transferee had no direct liability to the corporation or its receiver. In those cases, however, the transferor could have protected himself by insisting by means of a restricted endorsement that the shares be registered on the books of the corporation in the name of his transferee since the statutes usually provide for liability only on the part of registered owners and present shareholders. In neglecting to compel registration the transferor assumed the risk of securing indemnity from the final transferee:Rogers v. Toland, supra.
The entire problem is analogous to one which is firmly established in our law, namely, the relationship between grantors, grantees and mortgagees. Where a grantee assumes and agrees to pay a mortgage he is directly liable *Page 447 
to the mortgagor even though he has transferred the property and even though he might have owned the property only for a short time: Northern Trust Company v. Philadelphia WholesaleDrug Company, 333 Pa. 386. The liability is imposed regardless of actual ownership at the time of the default. If any one of a series of grantees is compelled to pay the mortgage indebtedness by reason of the assumption of liability either in the deed of conveyance or an extension agreement, the law implies an obligation of indemnity on the part of his immediate grantee or any subsequent grantee. This liability for indemnity is imposed even though the grantee be a dry trustee if the grantor has no knowledge that he is so acting: Britton v. Roth,313 Pa. 352.
There are substantial reasons, therefore, of equity and justice for implying an obligation of indemnity on the part of the defendant to the plaintiff who has paid an obligation for which the former was equally liable.
The admitted facts establish a special defense in favor of Belzer Company, the first additional defendant, since unlike E. W. Clark Company they purchased 200 shares of the stock as broker for Albert M. Greenfield although the remaining 15 shares were purchased as principal and resold to Henry W. Balka as trustee. Belzer Company contend that as brokers they were not liable directly to the receiver for the statutory assessment since they never were the real or beneficial owners of the shares. Their position is in effect analogous to that presented in the case of Laurent v. Anderson, supra, andBarbour v. Thomas, supra, where title at the same time was divided between two persons.
It does not follow, however, that this additional defendant is not liable to the original defendant. Albert M. Greenfield was liable directly to the receivers as real owners. Belzer 
Company acted as agent for an undisclosed principal and in their relations with E. W. Clark Company dealt as principal and principal. An authorized agent who executes a contract for an undisclosed *Page 448 
principal becomes a party thereto and stands in the place of his principal and is subject to the obligations of his principal: Restatement on Agency, section 322. This fundamental principle is applicable to purchases and sales made by brokers and a broker who contracts in his own name without disclosing the identity of his principal is personally liable. This is true even though the other contracting party is aware that the broker is an agent only. Meyer Law of Stock Brokers and Stock Exchanges, page 144, Winslow v. Kaiser, 313 Pa. 577.
The additional defendant argues that his liability must arise from ownership. The liability of Belzer Company arises from the purchase of this stock by their undisclosed principal and by reason of the contract to which they became a party by failing to disclose their agency. The liability is not imposed by statute as an incident of ownership but is a quasi contractual obligation implied from the act of purchase:Willing v. Pennsylvania Company, supra, at page 235. In Lichtenv. Verner, 8 Pa. Dis. Rep. 218, the plaintiff was the registered owner of shares of stock which were sold to the defendant who was acting for an undisclosed principal. As registered owner the plaintiff was compelled to pay a subsequent assessment. The court held that there was an implied contract of indemnity running from the present owner to the plaintiff as transferor. The defendant, even though he was a broker, by failing to disclose his principal became a party to the contract. The court stated at page 221 "It is well settled that where one contracting on behalf of another fails to disclose his agency he becomes subject to all the liabilities, express or implied, created by the contract in the same manner as if he were the principal in the transaction. . . . He is, therefore, liable as if a principal in all matters arising out of the purchase."
Returning to the analogy in mortgage law it is established that a grantee who assumes and agrees to pay a mortgage is liable to his grantor upon an implied agreement *Page 449 
of indemnity even though he is but a dry trustee. Britton v.Roth, supra. It is, of course, immaterial for what length of time the grantee retained title. The first additional defendant, Belzer Company, is therefore liable to E. W. Clark Company, but in turn, of course, may look to Albert M. Greenfield, the undisclosed principal, for whom they were acting. In so far as the 15 shares sold to Henry W. Balka, trustee, Belzer Company was acting as principal and is in the same position as E. W. Clark Co.
 FINAL DECREE.
And now, to wit, this 6th day of May, 1940, the plaintiffs' petition to file exceptions nunc pro tunc is granted and the exceptions to the findings of the court are hereby sustained and the prothonotary is hereby directed to enter judgment on behalf of The Pennsylvania Company for Insurances on Lives and Granting Annuities and Robert A. McConaghy, trustees under the will of Henry Shetzline, deceased, against the original defendants, Edward Walter Clark, Herbert L. Clark, Sydney P. Clark, C. Sewell Clark, Clarence H. Clark, Wm. H. P. Townsend, John H. Repass, and Edward W. Clark, the 3d, co-partners trading as E. W. Clark Company in the sum of $13,864.87 with interest thereon at the rate of 6% from May 27, 1938, and in favor of the aforesaid original defendants against Charles H. B. Phillips and J. Leroy Merscher, individually and as co-partners trading together with John Jacob Belzer, deceased and John L. J. Belzer, deceased, as Belzer Company, and Alexander Conn and Girard Trust Company executors under the will of John L. J. Belzer, deceased, in the sum of $13,864.87 with interest thereon at the rate of 6% from May 27, 1938, and in favor of the aforesaid additional defendants against Albert M. Greenfield in the sum of $13,864.87 with interest thereon at the rate of 6% from May 27, 1938, in the action Court of Common Pleas No. 5, June Term, 1938, No. 5134. *Page 450 
The prothonotary is further directed to enter judgment in favor of The Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee under a deed of trust of Lidie D. May and Mary Dallas dated September 28, 1932, against the original defendants, Edward Walter Clark, Herbert L. Clark, Sydney P. Clark, C. Sewell Clark, Clarence H. Clark, William H. P. Townsend, John H. Repass and Edward W. Clark, the 3rd, co-partners trading as E. W. Clark Company, in the sum of $9,603.66 with interest thereon at the rate of 6% from May 27, 1938, and in favor of the aforesaid original defendants against the additional defendants, Charles H. B. Phillips and J. Leroy Merscher, individually and as co-partners trading together with John Jacob Belzer, deceased, and John L. J. Belzer, deceased, as Belzer Company, and Alexander Conn and Girard Trust Company, executors under the will of John L. J. Belzer, deceased, in the sum of $9,603.66 with interest thereon at the rate of 6% from May 27th, 1938, and in favor of the aforesaid additional defendants against Albert M. Greenfield in the sum of $9,603.66 with interest thereon at the rate of 6% from May 27th, 1938, in the action Court of Common Pleas No. 3, June Term, 1938, No. 5135.
And the Prothonotary is further directed to enter judgment in favor of The Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee under the Will of William V. McGrath, deceased, in trust for Adele C. McGrath and Virginia C. McGrath against the original defendants, Edward Walter Clark, Herbert L. Clark, Sydney P. Clark, C. Sewell Clark, Clarence H. Clark, William H. P. Townsend, John H. Repass, and Edward W. Clark, the 3rd, co-partners trading as E. W. Clark and Company in the sum of $2,466.36 with interest thereon at the rate of 6% from May 27th, 1938, and in favor of the aforesaid original defendants against the additional defendants, Charles H. B. Phillips and J. Leroy Merscher, individually and as co-partners, *Page 451 
trading together with John Jacob Belzer, deceased and John L. J. Belzer, deceased, as Belzer Company, and Alexander Conn and Girard Trust Company, Executors, under the Will of John L. J. Belzer, deceased, in the sum of $2,466.36 with interest thereon at the rate of 6% from May 27th, 1938, and in favor of the aforesaid additional defendants against Albert M. Greenfield in the sum of $616.59, with interest thereon at the rate of 6% from May 27, 1938, and against Henry W. Balka, Trustee, for Jerome Roy Balka, in the sum of $1,849.77 with interest thereon at the rate of 6% from May 27th, 1938, in the action Court of Common Pleas No. 7, June Term, 1938, No. 5136.
Defendants appealed.
Errors assigned, among others, in each appeal, related to the action of the court below in sustaining certain exceptions to the findings and conclusions of the trial judge.
The judgments of the court below are affirmed on the opinion of Judge ALESSANDRONI. *Page 452